**Crisona AYERS, Plaintiff,**

v.

**ARA HEALTH SERVICES, INC., Defendant.**

**Civil No. H–95–1179.**

United States District Court, D. Maryland.

Dec. 1, 1995.

Jeffrey A. Rosenzweig, Baltimore, Maryland, for plaintiff.

Philip M. Andrews, Kevin F. Arthur and Kramon and Graham, Baltimore, Maryland, for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiff Crisona Ayers has alleged under state law claims of breach of contract and wrongful discharge. Named as the defendant is her former employer,

ARA Health Services, Inc.[1] Plaintiff originally filed this action in the Circuit Court for Baltimore City. Defendant, a Missouri corporation, filed a Notice of Removal in this Court on April 20, 1995, asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332.

Presently pending before the Court are two motions: (1) plaintiff's motion to remand the case to state court, and (2) defendant's motion for summary judgment. Memoranda, affidavits, deposition excerpts, and other materials have been submitted by the parties both in support of and in opposition to the pending motions. A hearing was held in open court on November 17, 1995. For the reasons stated herein, the Court will deny plaintiff's motion to remand and will grant defendant's motion for summary judgment.

## I

### Facts

■ The relevant facts, viewed in the light most favorable to plaintiff, are as follows.[2] Plaintiff was hired by defendant as a registered nurse on February 13, 1992. She was to work at various penal institutions in Baltimore. Plaintiff acknowledges that throughout her employment she was an at will employee. On or about February 12, 1994, plaintiff fell on a patch of ice while at work, suffering a variety of injuries. She filed a workers' compensation claim on or about February 22, but continued her normal work. During this period, plaintiff was working the overnight shift at the Baltimore City Detention Center.[3]

On March 11, 1994, plaintiff's injuries required that she stop working for a brief period. She returned to work on March 25, 1994, at which time several of her co-workers allegedly informed her that defendant was "going to get rid of her." These co-workers did not advise plaintiff why they thought defendant had planned to discharge her.

On or about Friday, April 8, 1994, plaintiff received a written counselling letter from her supervisor, Suzzane Meyers, because of plaintiff's alleged failure to provide the appropriate medicine to a critically ill patient in late March. In the same letter, plaintiff was counselled for allowing a psychiatric patient to be placed in seclusion fully clothed and in possession of shoe strings and a pencil.

Also on April 8, 1994, plaintiff requested that Meyers grant her permission to miss work on Sunday, April 10, in order to travel to New York for her aunt's funeral, the date of which had not as yet been scheduled. Because no firm date had been set for the funeral, Meyers suggested that plaintiff take the following Friday, April 15, as her "death in family day," and plaintiff tentatively agreed.

Ultimately, the wake of plaintiff's aunt was scheduled for Monday, April 11, and the funeral for the next day. Once again, plaintiff requested permission to miss work on Sunday night, April 10, because her shift would not end until early Monday morning and she therefore would not have sufficient time to travel to New York for the wake. Meyers initially agreed, but later told plaintiff that she could not miss work that night and that her absence would be considered "unauthorized." Nevertheless, acting without permission, plaintiff traveled to New York, and did not appear for work on Sunday evening, April 10.

Meyers phoned plaintiff on April 13, 1994, and informed her that her employment was being terminated because of her unauthorized absence on April 10. Plaintiff claims, however, that the reason given by Meyers for the termination of her employment was merely a pretext for discharging her after she had filed a workers' compensation claim.

---

1. Defendant is now known as Correctional Medical Services, Inc. (hereinafter "CMS").

2. Because the court at this stage must view the evidence of record in the light most favorable to the non-moving party, "the facts summarized below, where disputed, reflect plaintiff's version of the events to the extent it is supported by affidavits, depositions or other documentary evi-

dence." *Magnuson v. Peak Technical Servs., Inc.,* 808 F.Supp. 500, 504 (E.D.Va.1992), *aff'd,* 40 F.3d 1244 (4th Cir.1994).

3. Her hours were from midnight to 8:00 a.m. on Fridays and from 7:00 p.m. to 7:00 a.m. on Saturdays and Sundays.

She accordingly filed this civil action in the Circuit Court for Baltimore City, alleging state law claims of breach of contract and wrongful discharge. The case was removed to this Court by defendant on April 20, 1995. Plaintiff's motion to remand was not filed until October 17, 1995, almost six months after the case's removal.

## II

### Plaintiff's Motion to Remand

In moving to remand this case to state court, plaintiff contends that this Court lacks subject matter jurisdiction. Defendant opposes plaintiff's motion on the grounds that case law does not support plaintiff's motion and that, in any event, plaintiff has waived her right to seek remand.

Claiming the existence of diversity jurisdiction, defendant removed this case to this Court pursuant to 28 U.S.C. § 1441. It is plaintiff's position, however, that this suit is a nonremovable action pursuant to 28 U.S.C. § 1445(c), which provides as follows: "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." In opposing remand, defendant contends that this particular suit is not a nonremovable action under § 1445(c) because a cause of action based on a wrongful discharge is a tort claim, separate and independent from a claim arising under Maryland's workers' compensation laws.

Workers' compensation laws of Maryland make it a criminal offense to discharge an employee from employment *solely* because the employee files a workers' compensation claim. Md.Lab. & Emp.Code Ann. § 9–1105 (emphasis added). Maryland courts have recognized that under common law tort principles, an employee may institute a private right of action if that employee has been discharged in contravention of "some clear mandate of public policy." *Ewing v. Koppers Co.*, 312 Md. 45, 49, 537 A.2d 1173 (1988); *Adler v. American Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464 (1981). A discharge in violation of § 9–1105 has been recognized as violating a clear mandate of public policy. *Ewing*, 312 Md. at 50, 537 A.2d 1173; *Kern*

*v. South Baltimore Gen. Hosp.*, 66 Md.App. 441, 452, 504 A.2d 1154 (1986).

Plaintiff insists that the established law of the Fourth Circuit supports her motion to remand. *See Roberts v. Citicorp Diners Club, Inc.*, 597 F.Supp. 311, 314 (D.Md.1984) (action for wrongful discharge based on filing a workers' compensation claim arises under workers' compensation laws of Maryland); *see also Arthur v. E.I. DuPont de Nemours & Co, Inc.*, 58 F.3d 121, 128 (4th Cir.1995) (discussing West Virginia law); *Pope v. Bethesda Health Ctr., Inc.*, 813 F.2d 1306, 1308 (4th Cir.1987) ("We do not question the correctness of *Roberts* "). In opposition, defendant contends that any statements in *Roberts, Arthur* and *Pope* are not dispositive, and that more recent case law indicates that an implied private right of action for wrongful discharge does not arise under workers' compensation laws. *See Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 724 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994).

It is not necessary here for the Court to address the merits of this disputed issue because plaintiff in this case is procedurally barred from seeking remand at this time. 28 U.S.C. 1447(c) provides:

> A motion to remand the case on the basis of any defect in removal procedure must be made within thirty days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

■ Based on the plain language of § 1447(c), this Court has concluded that plaintiff has waived her right to object to removal, even if her claim is one arising under the workers' compensation laws. *See Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783, 786 (5th Cir. 1993). The first sentence of § 1447(c) is clearly applicable to the removal of claims arising under workers' compensation laws, because the removal of such a claim is merely a defect in procedure and does not affect subject matter jurisdiction which otherwise exists. *Graef v. Chemical Leaman Tank Lines*, 860 F.Supp. 1170, 1175 (E.D.Tex.

1994); *Cedillo v. Valcar Enter. & Darling Del. Co., Inc.*, 773 F.Supp. 932, 938 (N.D.Tex. 1991); *Cook v. Shell Chem. Co.*, 730 F.Supp. 1381, 1382 (M.D.La.1990). Indeed, it has been held that a court may not, *sua sponte*, remand an action under § 1447 because of procedural defects. *In re Continental Cas. Co.*, 29 F.3d 292, 294–95 (7th Cir.1994); *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir.1995). Although no court within the Fourth Circuit has addressed this issue, the few federal courts which have considered it have all held that, under circumstances like those present in this case, a plaintiff's right to remand is waived by an untimely motion.

Here, this Court clearly has subject matter jurisdiction over the present case. There exists diversity of citizenship, and the amount in controversy is over $50,000. *See* 28 U.S.C. § 1332. Since subject matter jurisdiction is not lacking, the first sentence of § 1447(c) is applicable in this case and defeats plaintiff's attempt to remand the case if her motion is untimely.

In this case, defendant filed its Notice of Removal on April 20, 1995. Plaintiff did not file her motion to remand until October 17, 1995, nearly six months later. This is well beyond the 30–day period established by § 1447(c). Plaintiff's motion therefore is untimely, and her belated objection to removal must be deemed to have been waived. Accordingly, plaintiff's motion to remand will be denied.

### III

#### Defendant's Motion for Summary Judgment

##### (a)

##### Applicable Principles

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party (at the summary judgment stage) may be discharged by 'showing'—that is, pointing out to

the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). One of the purposes of Rule 56 is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant in the case may be liable under the claims alleged. *See* Rule 56(e). If the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett*, 477 U.S. at 322, 323, 106 S.Ct. at 2552, 2553.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.'" *Barwick*, 736 F.2d at 958–59 (*quoting Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). A genuine issue of material fact cannot be created "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In the absence of a minimal showing by a plaintiff that the defendant may be liable under the claims alleged, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15; *Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (*quoting Catrett,* 477 U.S. at 323–24, 106 S.Ct. at 2553).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion of for summary judgment must be granted. Judgment will accordingly be entered in favor of the defendant.

### (b)

### Breach of Contract

In Count One of her complaint, plaintiff alleges that defendant breached an implied contract "to behave in an ethical manner," created by language in defendant's personnel policy manual. Plaintiff further alleges that defendant has failed to pay her for 30 hours of earned vacation time. Defendant insists that no contractual relationship existed beyond plaintiff's at will employment.

■ An at will employee has no claim for breach of contract unless she can show the existence of some contractual obligation that was undertaken and subsequently breached by the employer. *See, e.g., Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 309, 596 A.2d 1069 (1991). Plaintiff contends that a contractual obligation arose because of language in defendant's personnel policy manual. However, personnel policies may give rise to contractual rights only if they are properly expressed and communicated to the employee in a fashion that creates a reasonable basis for the employee's reliance on the provisions. *Hrehorovich v. Harbor Hosp. Ctr., Inc.,* 93 Md.App. 772, 793, 614 A.2d 1021 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993). It has been held that "general statements of policy are no more than that

and do not meet the contractual requirements of an offer." *Staggs v. Blue Cross of Md., Inc.,* 61 Md.App. 381, 392, 486 A.2d 798, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). Moreover, justifiable reliance upon a policy statement is precluded where contractual intent has been expressly disclaimed. *Castiglione v. Johns Hopkins Hosp.,* 69 Md. App. 325, 341, 517 A.2d 786 (1986), *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1987).

■ In this case, plaintiff has relied on a portion of defendant's personnel policy manual entitled, "Business Conduct Policy," which states that "[i]t is CMS policy ... to behave in an ethical manner." Plaintiff contends that defendant's failure to allow her to take her requested "death in family day" leave on April 10, 1994, amounts to the breach of an express covenant. This Court would disagree.

■ On the record here, this Court concludes that the general policy statement relied upon by plaintiff is insufficient as a matter of law to form the basis for a breach of contract claim. As the court in *Staggs* stated, "not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant." *Staggs,* 61 Md.App. at 392, 486 A.2d 798. Moreover, the first page of defendant's personnel policy manual indicates that the policies incorporated therein are for informational purposes only and "under no circumstances should [they] be deemed or construed to be an employment contract between CMS and any employee." This provision clearly disclaims any contractual intent. *See Castiglione,* 69 Md.App. at 340–41, 517 A.2d 786. This Court concludes that any reliance by plaintiff on this policy statement was unjustified as a matter of law, and that no contractual relationship arose because defendant unequivocally disclaimed any contractual intent in the policy manual.

■ Similarly, there is no merit to plaintiff's contention that amounts were owed to her for accrued vacation time. Plaintiff claims that defendant has failed to pay her for approximately 30 hours of vacation time. As explained by Nora Lane, defendant's Pay-

roll Manager, plaintiff accrued 34 hours of vacation time during the 195 days she worked for defendant in 1995. At the time she was discharged, plaintiff had used 28 of these hours, and she has since been paid for the remaining six hours. Plaintiff has not challenged these facts established by the affidavit of defendant's Payroll Manager.

Accordingly, since no genuine issue of material fact exists as to plaintiff's breach of contract claim, the motion of defendant for summary judgment as to this claim will be granted.

### (c)

### *Wrongful Discharge*

 In Count Two of her complaint, plaintiff alleges that she was wrongfully discharged in violation of public policy. As discussed hereinabove, § 9–1105, Md.Lab. & Emp.Code Ann., prohibits an employer from discharging an employee *solely* because the employee files a workers' compensation claim. (emphasis added). As noted, Maryland recognizes a private cause of action for wrongful discharge for filing a workers' compensation claim. *See Ewing,* 312 Md. at 50, 537 A.2d 1173; *Kern,* 66 Md.App. at 452, 504 A.2d 1154. However, as long as an employer has some legitimate reason for discharging an at will employee, no liability arises. *Id.*

In the present case, defendant contends that it terminated plaintiff's employment because of her unauthorized absence on April 10, 1994. In her complaint and in the affidavit filed by her in opposition to the pending motion for summary judgment, plaintiff insists that the sole reason that she was discharged was because she filed a workers' compensation claim. In her deposition testimony, however, plaintiff recognized that defendant had a proper reason for discharging her. She testified as follows:

Q: Assume for a moment that you hadn't filed a Worker's Comp. claim and CMS fired you because you didn't show up on April 10th. Do you think that would have been wrong?

A: No.

Q: All right.

A: Being an at will employee, no.

Other evidence submitted by plaintiff also indicates that she was not fired *solely* because she filed a workers' compensation claim. A co-worker of plaintiff, Clinton Winder, states in his affidavit that defendant's Charge Nurse, Mary Odenhall, told him that plaintiff

> would not be returning to work due to her having filed a workers compensation claim and the resulting absences from work due to her back injury.... [Plaintiff] had taken too much time off from work or that she had taken time off improperly.[4]

The circumstances present here are similar to those present in *Kern.* In that case, the plaintiff admitted in her declaration, in her deposition, and at appellate argument that she was discharged for absenteeism as well as for claiming workers' compensation benefits. *Kern,* 66 Md.App. at 447, 504 A.2d 1154. The Court of Special Appeals accordingly concluded that because plaintiff in that case had alleged that she was not discharged "solely for filing a claim," she had not stated a proper cause of action for wrongful discharge. *Id.* at 448, 504 A.2d 1154. The Court further stated that the language of § 9–1105 "does not imply that an employee may not be discharged for excessive absenteeism due to a compensable injury." *Id.*

In this case, plaintiff has similarly conceded in her deposition testimony and in other proffered evidence that defendant had a legitimate reason for terminating her employment, namely her unauthorized absence on April 10, 1994. The contradictory statements in her affidavit and in the Winder affidavit are not sufficient to create a genuine issue of material fact. *See Barwick,* 736 F.2d at 960. Moreover, it is clear from *Kern* that under Maryland law, even if plaintiff were fired because of excessive absenteeism due to her work-related injury, she could not successfully claim that she was wrongfully discharged.

In opposing defendant's motion for summary judgment, plaintiff insists that she followed proper procedures in requesting time

---

4. Other statements allegedly made by co-workers and included in plaintiff's affidavit were no more than general "office gossip" and are inadmissible hearsay.

**150**

off, and she argues that defendant merely used her unexcused absence as a pretext for discharging her. She relies on information she received from co-workers and contends that she was a victim of selective discipline when she received the counselling letter. However, plaintiff has presented no evidence that other employees were not discharged after unauthorized absences. Moreover, the mere fact that she may have followed proper procedures in requesting time off did not require defendant to grant that time off.[5] Although it may be true that she received a counselling letter from her supervisor when others did not, she was discharged because of her unauthorized absence, and not because of the incidents outlined in her supervisor's letter.

The Court therefore has concluded as a matter of law on the record here that plaintiff cannot establish that she was discharged solely because she filed a workers' compensation claim. Since no genuine issue of material fact exists as to this issue, defendant's motion for summary judgment as to plaintiff's wrongful discharge claim will also be granted.

### IV

#### *Conclusion*

For all the reasons stated, this Court has concluded that the facts of record in this case establish that plaintiff has waived any right which she had to remand this case to state court. Moreover, plaintiff as a matter of law cannot prove her claims of breach of contract or wrongful discharge. Accordingly, plaintiff's motion of plaintiff to remand will be denied, and defendant's motion for summary judgment will be granted. An appropriate Order will be entered by the Court.

---

**5.** Defendant disputes that the procedures relied upon by plaintiff even applied to those in plaintiff's position.